**UNITED STATES of America**

v.

**Joseph IMPASTATO.**

**Criminal Action No. 05–325.**

United States District Court,
E.D. Louisiana.

Jan. 28, 2008.

Karl J. Koch, Glisson & Koch, APLC, Baton Rouge, LA, Michael Seth Fawer, Smith & Fawer, LLP, Covington, LA, for Joseph Impastato.

Peter Michael Thomson, U.S. Attorney's Office, New Orleans, LA, for United States of America.

### MEMORANDUM AND ORDER

STANWOOD R. DUVAL, JR., District Judge.

This Court has before it the following motions: the Government's Motion in Limine to Preclude the Defendant from Introducing Attorney Legal Opinion Documents (Rec. Doc. 129); the Government's Motion to Compel Disclosure or in the Alternative to Exclude Expert Witness Testimony (Rec. Doc. 134); Defendant Joseph Impastato's Motion to Compel Production of Witness Statements and Interviews (Rec. Doc. 130); and the Defendant's Motion to Exclude the Government's Rule 404(b) Evidence (Rec. Doc. 131). The Court heard argument on these motions on January 23, 2008. It has reviewed the pleadings and relevant law, and now is ready to rule.

### I. FACTS

The defendant, Joseph Impastato, is a former St. Tammany Parish councilman who is charged with eleven counts of conspiracy, extortion, federal program fraud, attempted money laundering, and false statements to the Internal Revenue Service (IRS). Second Superseding Indictment (Rec. Doc. 79). The indictment generally alleges crimes that occurred in relation to a contracts offered by St. Tammany Parish for post-Hurricane Katrina debris removal, and the Defendant's subsequent efforts to hide the proceeds from those alleged crimes. The Second Superseding Indictment, filed on May 4, 2007, significantly added allegations of false statements to the IRS that occurred from 2002 through 2005. This Court, in an opinion issued on August 28, 2007, severed the tax counts from the rest of the indictment. *United States v. Impastato*, Crim A. No. 05–325, 2007 WL 2463310, at *8 (E.D.La. Aug. 28, 2007) (Duval, J.).

### II. MOTION TO EXCLUDE RULE 404(b) EVIDENCE

The Government provided a Notice of Intent to Use Evidence pursuant to Rule 404(b) on April 30, 2007. Government's Notice to Use Intrinsic Evidence or Alternatively Rule 404(b) Evidence (Rec. Doc. 73) ("404(b) Notice"). In that notice, it set forth its intent to introduce various tax-related bad acts committed by the Defendant, specifically his failure to report income to the IRS for the years 1999 through 2004. These misrepresentations to the IRS allegedly laid the foundation for the Defendant's "extravagant lifestyle." 404(b) Notice at 5. The Government claims that this evidence is intrinsic to the crimes currently alleged, arguing that the "shakedowns" in 2005 are "simply extensions of Impastato's attempts to obtain unreported cash" by not reporting taxes. *Id.* at 6. Alternatively, the Government asserts that this evidence is admissible extrinsic evidence under Federal Rule of Evidence 404(b), claiming that the prior bad acts corroborate the Defendant's motive in extorting his victims, namely "funding his lifestyle and paying the least amount in taxes possible." *Id.* at 8. His alleged money laundering also was "an attempt to avoid any reporting of the money to any taxing authority." *Id.* The extrinsic tax evidence also allegedly shows the Defendant's intent to "extort the victims and hide the illicit funds for many of the same

reasons," as well as his "preparation, plan and knowledge of how to illicitly obtain cash and hide it successfully." *Id.*

### A. Are the Alleged Tax Violations "Intrinsic" Evidence?

 "Evidence of acts other than conduct related to the offense is intrinsic when the evidence of the other act and the evidence of the crime charged are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." *United States v. Yi,* 460 F.3d 623, 632 (5th Cir.2006), *quoting United States v. Freeman,* 434 F.3d 369, 374 (5th Cir.2005). Intrinsic evidence is generally admissible "so that the jury may evaluate all the circumstances under which the defendant acted." *United States v. Royal,* 972 F.2d 643, 647 (5th Cir.1992), *quoting United States v. Randall,* 887 F.2d 1262, 1268 (5th Cir.1989); *see United States v. Sumlin,* 489 F.3d 683, 689 (5th Cir.2007) (quoting *Royal* and *Randall* ). Because Federal Rule of Evidence 404(b) only governs extrinsic evidence, intrinsic evidence is directly admissible under Federal Rule of Evidence 402 and 403.[1] *See United States v. Loftis,* 15 F.3d 180 (5th Cir.1994) (unpublished opinion) ("This court has clearly differentiated between 'extrinsic' evidence of other acts, whose admissibility is prescribed by Rule 404(b), and 'intrinsic' evidence of other acts, whose admissibility is determined under the general relevance provisions of Rules 402 and 403.") (citation omitted).

In the present matter, the alleged tax violations here are not intrinsic to the crimes charged in the indictment as now formulated. The Government has made no effort in its indictment or other pleadings to charge that the tax-related offenses are part of the same criminal episode, or that they are otherwise intertwined. Indeed, the non-tax allegations are based on the same factual basis of post-Hurricane Katrina debris removal contracts arising in late 2005, while the tax-related charges are based on entirely different evidence and different actors-save, of course, for the Defendant. *See United States v. Ridlehuber,* 11 F.3d 516, 521–22 (5th Cir.1993) (finding evidence of defendant operating a drug lab not to be intrinsic to charge of unlawful possession of a firearm where it was not proven that "the drug-related evidence arose out of the weapons charge"). This analysis is substantially the same as this Court's reasoning in its August 28, 2007 opinion severing the tax counts from the rest of the indictment, and the Court reasserts those grounds herein. *Impastato,* 2007 WL 2463310, at *8 (noting no "evidentiary overlap" in the evidence because "the money received in the alleged debris removal scheme is not the same money that [was] involved in the Tax Counts."). Therefore, the alleged tax violations do not amount to intrinsic evidence under Rule 104(b).

### B. Are the Alleged Tax Violations "Extrinsic" Evidence?

 Federal Rule of Evidence 404(b) allows extrinsic evidence of "other crimes,

---

1. Rule 402 provides:
 All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.
 Fed.R.Evid. 402. Rule 403 in turn states:

 Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.
 Fed.R.Evid. 403.

wrongs, or acts" to be admitted, but only for limited purposes:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed.R.Evid. 404(b). Evidence that is extrinsic to the alleged crimes may be admitted, but only after being qualified under the two-step test prescribed in *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir.1978). Under *Beechum*, "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of [R]ule 403." *Id., quoted by United States v. Nguyen*, 504 F.3d 561, 574 (5th Cir.2007).

In the present case, the Government claims that the evidence of tax violations is probative of the Defendant's motive of funding his lavish lifestyle, his intent to extort his victims, and his preparation, plan and knowledge of hiding his allegedly ill-gotten money. This Court finds, however, that this extrinsic evidence is not admissible for any of these purposes. The false statements in the Defendant's tax returns are not sufficiently relevant regarding the intent placed at issue here. The tax-related bad acts all occurred well before the crimes alleged in the indictment that were committed after Hurricane Ka-

trina. Admittedly, evidence even upwards of nine years old has been found probative of intent. *See United States v. Mortazavi*, 702 F.2d 526, 528 (5th Cir.1983) (finding no error where district court allowed agent to testify regarding a drug deal made by the defendant nine years earlier where defendant put issue of intent to deal drugs at issue.). However, in such cases, the intent evidence is "identical." *See id.* ("While in this case there was a period of some nine years between the extrinsic offense and the offense charged, the intent required to commit both offenses was identical.").

Here, the intent to make false tax returns is not the same as the intent to extort money from a constituent, as is charged here. While the defendant is also charged with defrauding a federal program, the means by which he did so was through the alleged extortion, not through making false statements directly to a federal agency, as charged in the tax counts. These alleged tax-related bad acts are at best joined by the intent of greed, which is a generalized, vague intent and is not directly probative of the Defendant's intent to commit the specific crimes alleged here of fraud and money laundering. *See United States v. Johnson*, 872 F.2d 612, 624 (5th Cir.1989) (affirming admission of defendant's prior statements that he wished harm on particular victim where defendant claimed that he did not intend to solicit another person to harm that specific victim).

The tax counts are too attenuated to show knowledge, preparation, or plan, as the Defendant's knowledge and planning regarding his false statements to the IRS are not substantially similar to his knowledge of how to extort money. *See United States v. Morgan*, 505 F.3d 332, 341 (5th Cir.2007) (allowing evidence of defendant's prior act of opening a fraudulent bank account for her daughter to be probative

because "[s]uch knowledge of how to circumvent signature requirements rebutted her testimony that she had not signed the forms associated with counts one through twelve" involving submission of false heath care forms.). The extrinsic evidence further fails to show a pattern of conduct that is specifically similar to the charged crimes because the apparent pattern of conduct here is simply the Defendant's alleged tendency to seek money by illegal means. *See United States v. Prejean*, 429 F.Supp.2d 782, 789 (E.D.La.2006) (Fallon, J.) (allowing evidence of defendant's arrest for illegally transporting prescription medications because it specifically showed a pattern of conduct that was similar to the charged crimes of dispensing drugs outside the scope of legitimate medical practice).

█ The Court further finds that any probative worth of these tax-related crimes is substantially outweighed by the potential prejudice to the Defendant because the alleged tax crimes are of a different nature than the extortion, fraud and money laundering counts, therefore requiring potentially lengthy additional evidence regarding tax law that may confuse the jury. Admission of the alleged tax crimes would more likely unfairly prejudice the jury against the Defendant by making him appear to be a career criminal. *See United States v. Huffine*, No. Crim. A. 02–93, 2003 WL 122313, at *4 (E.D.La. Jan. 13, 2003) (Barbier, J.) (finding tax evasion evidence would be unfairly prejudicial to defendant in mail fraud case because the jury may "improperly persuaded to convict" on its perception that it is "illegal to use corporate funds to pay personal expenditures.").

Because the evidence of alleged tax-related bad acts by the Defendant is neither intrinsic to those charges currently before the Court in this matter, and because these bad acts are not probative extrinsic evidence of any matter prescribed by Rule 404(b), and furthermore because any probative value is substantially outweighed by unfair prejudice to the Defendant, this Court will not allow any evidence regarding the Defendant's prior tax-related bad acts.

## III. MOTION TO COMPEL PRODUCTION OF WITNESS STATEMENTS AND INTERVIEWS

█ The Defendant has moved for production of prior statements by Lee Mauberret ("Mauberret") and Barbara "Diana" Mauberret, who is Lee Mauberret's mother. The Court understands that a critical portion of the Government's case will rest on the testimony of Lee Mauberret, who obtained allegedly incriminating evidence from the Defendant regarding the extortion and federal program fraud counts. The Defendant has suggested, however, that part of his defense will be that he and Mauberret actually had a legitimate business partnership. Therefore, his demands for payment did not amount to extortion, but rather were demands for his legitimate share of the partnership profits. In relation to this defense, the Defendant claims here that Lee Mauberret provided different information to the Government regarding the timing of the Defendant's demands for money. These inconsistencies are allegedly material because Mauberret apparently first told agents that, from the very beginning, the Defendant "was arranging a business venture with the Mauberrets." Motion to Compel at 3. Two years later, however, Mauberret allegedly that "Impastato did not discuss financial participation until the debris site opened" and "Impastato demanded 50% of the profits on the night the contract was signed [with the parish]." *Id.* Second, Mauberret allegedly has "vacillated over the very important question of whether he ever agreed to pay Impastato anything." *Id.* Finally, the

Defendant alleges that Mauberret has not been consistent as to when he met with FBI agents because Mauberret testified that he first met with the FBI on October 14, 2005, but Special Agent Goodson's criminal complaint states that an agent spoke with a cooperating witness in September 2005. *Id.* at 5. The Defendant claims that these inconsistencies amount to material evidence under *Brady*, and should prompt immediate discovery. The Defendant also seeks accelerated discovery of Lee and Diane Mauberret's statements under *Jencks* because of "rampant inconsistencies" which will require additional preparation before trial.

 Evidence sought pursuant to *Brady* must be material, which means that "there is a 'reasonably probability' that the outcome of the trial would have been different if the evidence had been disclosed to the defendant." *United States v. Runyan,* 290 F.3d 223, 247 (5th Cir.2002), *citing United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). Stated alternatively, materiality involves whether "disclosure of the statements 'would have resulted in a markedly weaker case for the prosecution and a markedly stronger one for the defense.' " *Graves v. Dretke,* 442 F.3d 334, 345 (5th Cir.2006) (quoting *Kyles v. Whitley,* 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). "[A] defendant seeking merely an *in camera* inspection to determine whether a particular source contains *Brady* material 'need only make a plausible showing that the file will produce material evidence.' " *Runyan,* 290 F.3d at 245 (quoting *United States v. Lowder,* 148 F.3d 548, 551 (5th Cir.1998)). "*Brady* applies equally to evidence relevant to the credibility of a key witness in the state's case against a defendant." *Graves v. Dretke,* 442 F.3d 334, 339 (5th Cir.2006) (citing *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972)).

In the present case, it appears that these prior witness statements may possibly be *Brady* material. In *Graves v. Dretke,* 442 F.3d 334 (5th Cir.2006), the Fifth Circuit found that a *Brady* violation had occurred where statements by the state's "star witness" were suppressed, particularly where the defendant had made no incriminating statements, and limited physical evidence linked the defendant to the crime. Because the state's case rested "almost entirely" on one witness's testimony, and "because the state presented testimony inconsistent with the two suppressed statements," the court found it necessary to reverse the conviction. *Id.* at 344. Additionally, in *United States v. Thomas,* 12 F.3d 1350, 1365 (5th Cir.1994), the Fifth Circuit considered a defendant's claim that he suffered a *Brady* violation where the Government failed to produce "notes made by agents during debriefing sessions with the plea-bargaining defendants." The district court accepted the prosecutors' representation that there was no *Brady* material, but when during trial these notes came to light, the Government claimed they were not *Brady* material. The Fifth Circuit, however, held that remand was appropriate because it was not clear whether the district court had "reviewed in camera all or just a portion of the notes" and what were the "exact findings of the district court regarding the material reviewed." *Id.; see also Dickson v. Quarterman,* 462 F.3d 470, 479–80 (5th Cir.2006) (where prosecutor failed to turn over *Brady* material because he thought it to be protected work product, noting that prosecutor "should have known that the duty lay with the trial judge, not the prosecutor, to weight the need for confidentiality against the defendant's need to use the material to obtain a fair trial.").

The statements at issue here potentially could be exculpatory for the defense. It appears from most representations that

Mauberret will be the "star witness." While the Government apparently has recordings of the Defendant, it seems that Mauberret will be the critical witness regarding whether he and the Defendant actually had a business relationship, and whether the Defendant threatened him in order to extort him. Admittedly there is no false or misleading testimony here as in *Graves,* but should there be inconsistent statements from Mauberret that are not released by the Government, it could prompt a similar *Brady* violation. Therefore, this Court will order *in camera* review of Lee Mauberret's prior statements so that the Court can make its own evaluation of *Brady* materiality in these statements.

■ As to the Defendant's request for early disclosure of *Jencks* material, there appears to be no obligation on behalf of the Government to turn over material early. *See United States v. Expose,* Crim. A. No. 06–92, 2007 WL 956584, at *2 (E.D.La. Mar. 28, 2007) (Barbier, J.) ("The *Jencks* Act does not require earlier disclosure of witness statements" than 48 hours prior to trial "as is local custom in this jurisdiction."). Decisions within this jurisdiction suggest that any decision to allow early production of *Jencks* material is discretionary. *See United States v. Edwards,* 2003 WL 22204534 (E.D.La. Sept. 12, 2003) (Fallon, J.) (stating "[t]he Court declines implement such a rule" requiring Government to turn over *Jencks* material ten days before trial, and finding that "submission of the material forty-eight hours in advance of trial is sufficient for trial preparation."); *United States v. Bernard,* Crim A. No. 92–558, 1993 WL 121258, at *1 (E.D.La. Apr. 14, 1993) (Sears, J.) (allowing Government to turn over *Jencks* material 48 hours in advance of trial instead of five days before trial as requested by defense). It appears here that the defense is not necessarily entitled to *Jencks* discovery at any time before the witness testi-

fies, let alone 48 hours before trial as is custom in this district. The Defendant has only offered the argument that there are "rampant inconsistencies" within these statements. Such inconsistencies, rampant or not, are simply part of any trial, and therefore this Court finds no compelling reason to order early production of *Jencks* material.

## IV. MOTION TO PRECLUDE INTRODUCTION OF LEGAL OPINION EVIDENCE

The Government seeks to preclude introduction of attorney legal opinion evidence, specifically the unsigned legal opinion letter from attorney Michael Fawer ("Fawer Letter"), and the interoffice memorandum from attorney Michael Hill to Michael Fawer regarding "ethical issues in Impastato" ("Hill Memo"). It appears undisputed that the Defendant requested that Fawer provide an opinion regarding the Defendant's intent on being a part of a partnership that would seek a contract from St. Tammany Parish while the Defendant served as an official of the parish. Fawer then commissioned Hill to produce a memorandum on the relevant issues. After several memo drafts traded between Hill and Fawer, the final draft of the memo was apparently used as the basis for Fawer's opinion letter to the Defendant.

The Government first alleges that the opinion documents contain hearsay and lack any witness who can authenticate them. The Government further specifically alleges that the "state of mind" exception of Federal Rule of Evidence 803(3) does not apply. Second, it claims that the documents contain argument, statutes and cases that would confuse the jury, be cumulative, and supplant the Court's role of instructing as to law.

At this point prior to trial, the Court finds that it is premature to make any rulings. However, the Court will provide

guidance to the parties. As with most documentary evidence, the most immediate concerns will be hearsay and authentication. *See* Fed.R.Evid. 801(c); Fed.R.Evid. 901. Due to the potentially prejudicial nature of these documents, the Court will order that the parties must seek a sidebar prior to any mention of any legal opinion documents during trial. However, it appears clear at this time that the legal opinion evidence can only be admitted *in toto* if offered for the purposes of establishing the defense of honest reliance on the advice of counsel. If such a defense is not offered, then the legal opinion evidence suffers from significant relevance issues because it concerns crimes that were not charged in the indictment. *See DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir.2005) (affirming exclusion of expert on business ethics because of danger of confusion where ethics was not at issue, but rather whether a bribe transpired and whether the defendant "did or did not believe it was a bribe"). Moreover, the legal opinions are based on the facts related by the Defendant to his attorneys, facts that are in dispute and which form the basis for guilt in this case. Therefore, the Court finds that, if the advice of counsel defense is not asserted, any meager probative value of the legal opinion evidence would be substantially outweighed by its potential to unfairly prejudice and confuse the jury with its legal analysis and conclusions, particularly where instructions on the law are the province of the Court and the ultimate question of guilt is the province of the jury. *See Askanase v. Fatjo*, 130 F.3d 657, 672 (5th Cir.1997) (affirming refusal of allowing expert legal witness to testify where the opinion would speak to whether corporate officers breached fiduciary duties, which is an ultimate fact for the jury to decide); *Willette v. Finn*, 778 F.Supp. 10, 11 (E.D.La.1991) (refusing to admit expert legal opinion where admitting such testimony "would pose the risk that jurors would confuse the Court's instructions with the views put forward by the parties' experts."). Accordingly, should the advice of counsel defense not be asserted, this Court will not permit admission of the legal opinion itself into evidence, although the Court may allow the Defendant to testify as to the fact that he sought and received a legal opinion.

The Court notes that if legal opinion evidence is used to establish the defense of honest reliance on the advice of counsel, special issues of relevance arise. These issues involve whether the legal opinion actually addressed the crimes alleged here, and further whether the advice of counsel defense negates the relevant *mens rea* of the crimes alleged in the indictment. *See United States v. Ragsdale*, 426 F.3d 765, 778 (5th Cir.2005) (affirming district court's refusal to allow defendant to present reliance on advice of counsel defense where the crime, mailing obscene materials, only required that the defendant act "knowingly," not willfully); *United States v. Mathes*, 151 F.3d 251, 255 (5th Cir.1998) ("[r]eliance on counsel's advice excuses a criminal act only to the extent it negates willfulness and to negate willfulness counsel's advice must create (or perpetuate) an honest misunderstanding of one's legal duties."); *United States v. Carr*, 740 F.2d 339, 346 n. 11 (5th Cir.1984) ("Strictly speaking, good faith reliance on advice of counsel is not really a defense to an allegation of fraud but is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent."). Should the Defendant seek to put forth the defense of reliance on the advice of counsel, the Court will require briefing on the issue of the availability of this defense prior to trial.

## V. MOTION TO COMPEL PRODUCTION OF EXPERT WITNESSES

▮] Lastly, this Court is presented with an issue that appears to be, oddly,

one of first impression. The Government has sought production of the identity of any expert witnesses from the Defendant. This matter from Magistrate Judge Moore's decision and order regarding discovery based on a April 4, 2007, holding that the Defendant could withdraw his request for expert summaries from the Government under Federal Rule of Criminal Procedure 16(a)(1)(G). Therefore, the issue here is what authority, if any, does this Court have to order disclosure of the expert witnesses by the Defendant where the Defendant has no reciprocal discovery obligation to disclose such information under Federal Rule of Criminal Procedure 16(b)(1)(C).

While the parties appear to make much of different facts, the most operative ones appear to be these. First, the Defendant was originally represented by different counsel than those he has now. At some point early in his representation of the Defendant, that counsel made a broad request for discovery, asking for *"all* information described by Federal Rule of Criminal Procedure 16." Apr. 16, 2007 Ruling of Magistrate Judge Moore ("Moore Ruling"). The Government replied with some discovery, and apparently continued to supply discovery to the Defendant's earlier counsel (via letters dated February 17, March 10, and August 18, 2006). However, the Government at no time provided any notice of expert witnesses, nor did the Government tell the Defendant's first counsel that it did not intend to call any expert witnesses.

At some point (likely 2006), the Defendant changed counsel to his current attorneys. Those attorneys filed a discovery request under Rule 16, in which they asked for documents under specific sections of Rule 16, but did not include a request for documents under Rule 16(a)(1)(G), which governs expert witnesses. An April 5, 2007 hearing date was

set. Again, the Government made no mention of expert witnesses or the lack thereof.

At the April 5th hearing, new defense counsel asked to withdraw any request by prior defense counsel for any expert reports. Defense counsel admitted that a broad request had been made by the previous attorney; however, he noted that this request was made by prior defense counsel, and more importantly that the Government had not made any disclosure as to whether it had any expert witnesses. Thus, the Defendant claimed that the Government had not "complied" under Rule 16, which would then trigger the defense's reciprocal duty. The Government, however, argued during this hearing that it did not have any experts (so no summaries existed for them to turn over), and therefore the simple fact that the request had been made by the defense should prompt them to turn over their experts and summaries.

In a written order dated April 16, 2007, Magistrate Judge Moore found that "the government will not be prejudiced by the granting of defendant's request to withdraw prior defense counsel's request for Rule 16 discovery insofar as a request for Rule 16(a)(1)(G) was implicated." Moore Ruling at 5. Magistrate Judge Moore also considered the Government's outstanding request for reciprocal discovery. This motion appears to have encompassed expert reports as well as any other evidence that would be used in the Defendant's case-in-chief. Magistrate Judge Moore ruled that the Defendant must turn over evidence that he is planning to use as "affirmative evidence in furtherance of [the] theory of the case' rather than impeachment evidence used to discredit a government witness." *Id.* at 6, *citing United States v. Hsia,* No. Crim. 98–0057(PLF), 2000 WL 195067, at *1 (D.D.C. Jan. 21, 2000). Mag-

istrate Judge Moore found that the Government's requests and the Defendant's concerns were actually reconcilable, as the Government would be entitled to case-in-chief materials, and the defense could protect impeachment material.

This Court held a hearing regarding this issue on January 17, 2008, which generally concerned some apparent inconsistency between Magistrate Judge Moore's oral ruling and subsequent written ruling. This Court found that Magistrate Judge Moore's written ruling controlled, and found that therefore the Defendant could retract his Rule 16(a)(1)(G) request for expert production because the Government, by not making any expert submissions to the Defendant whatsoever, had not complied with those specific Rule 16 obligations. Therefore, the Court affirmed Magistrate Judge Moore's ruling that the Defendant's duty to provide reciprocal expert discovery under Rule 16(b)(1)(C) was nullified. *See* Order, *United States v. Impastato*, Crim. A. No. 05–325 (E.D.La. Jan. 28, 2008) (Duval, J.) (Rec. Doc. 156).

However, this Court reserved the issue of whether *Daubert*, which mandates that courts evaluate the reliability and accuracy of expert testimony prior to admission, can require the Defendant to divulge the identity and topic of expert testimony prior to trial, regardless of the discovery mandates of Rule 16. This Court and the parties have failed to locate case law that discusses the propriety of ordering a pretrial hearing for the admissibility of defense expert testimony in a criminal case where the defendant has not invoked his right to expert witness discovery under Rule 16(a)(1)(G). However, the Court finds that it does have some discretion in this area. The Supreme Court's seminal opinion of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993), reaffirmed the role of the trial judge in "ensur[ing]

that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Subsequently, the Supreme Court clarified that the trial court's gatekeeping role regarding expert testimony extends not only to scientific testimony, but to all expert testimony. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149, 119 S.Ct. 1167, 1174–75, 143 L.Ed.2d 238 (1999). Said the Court, "The trial judge's effort to ensure that specialized testimony is reliable and relevant can help the jury evaluate that foreign experience, whether the testimony reflects scientific, technical, or other specialized knowledge." *Id.*

The tension the Court finds here is between the Supreme Court's mandate to trial courts to be gatekeepers of expert testimony, and the mandate of the Federal Rules of Criminal Procedure that require the Defendant to disclose summaries of potential expert testimony only if he so requests such expert disclosure from the Government. Rule 16(b) provides:

> The defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial, if—
>
> > **(i)** the defendant requests disclosure under subdivision (a)(1)(G) and the government complies; or
> >
> > **(ii)** the defendant has given notice under Rule 12.2(b) of an intent to present expert testimony on the defendant's mental condition.
>
> This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

Fed.R.Crim.P. 16(b)(1)(C). It has been observed that the drafters of the Federal Rules did not provide for expansive discovery by the Government due to "constitu-

tional limitations that are thought to restrict prosecutorial discovery." 2 Charles Alan Wright, et al., Federal Practice & Procedure Criminal § 255 (3d ed. 2007). Indeed, several courts have held that only these rules can impose the duty of disclosure on defendants, regardless of the authority of the judge. *See United States v. Dailey,* 155 F.R.D. 18, 21 (D.R.I.1994) (holding that Federal Rules trumped local rules where local rule required automatic disclosure by both parties of evidence to be used at trial without any prior defendant request); *United States v. Layton,* 90 F.R.D. 520, 523 (N.D.Cal.1981) ("[T]here is no authority for the proposition that a court has inherent authority to compel a defendant to provide pretrial discovery which is not specifically authorized in Rule 16.").

However, the Court is mindful that the Supreme Court was crystal clear in recognizing the wide discretion of trial judges to craft appropriate means of examining the reliability of expert testimony. As stated by the Supreme Court in Kumho Tire:,

> The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable. Our opinion in [*General Elec. Co. v.*] *Joiner* [522 U.S. 136, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)] makes clear that a court of appeals is to apply an abuse-of-discretion standard when it 'reviews a trial court's decision to admit or exclude expert testimony.' That standard applies as much to the trial court's decisions about how to determine reliability as to its ultimate conclusion.

*Kumho Tire,* 526 U.S. at 152, 119 S.Ct. at 1176(emphasis in original) (internal citations omitted). While the Supreme Court in *Kumho Tire* only directly considered civil expert discovery, it appears reasonable that trial judges must have the same authority and discretion to create appropriate procedures for determining the admissibility of expert testimony in criminal cases as well. Indeed, the Fifth Circuit has applied the same abuse of discretion review to the admission of expert testimony in criminal cases as it does in civil cases. *See United States v. Hitt,* 473 F.3d 146, 158 (5th Cir.2006) (evaluating admissibility of expert psychiatric witness regarding "grooming" by sexual abusers of victims by using "the standards in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*"). Therefore, this Court finds that it has the same discretion in deciding how to evaluate expert testimony, but that these procedures must be crafted in a way that respects the fact that the Defendant has no obligation to present a defense until the Government has established its case. Therefore, this Court will order *in camera* submission from the Defendant of the identity and subject matter of any potential expert witnesses. Should the Court find that the admissibility of such witnesses should be determined prior to trial, it shall order such hearings as are appropriate, as well as reciprocal discovery by the Government as well.

## VI. CONCLUSION

In light of the foregoing opinion, the Court makes the following rulings:

**IT IS ORDERED** that the Defendant's Motion to Exclude the Government's Rule 404(b) Evidence (Rec. Doc. 131) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Defendant's Motion to Compel Production of Witness Statements and Interviews (Rec. Doc. 130) is **GRANTED IN PART AND DENIED IN PART.** The Government will submit to the Court for *in camera* inspection copies of FBI 302 forms and notes from interviews with Lee Mauberret

as soon as possible. The Government is not required to submit any forms or notes regarding interviews with Barbara "Diana" Mauberret. The Government is not required to submit any *Jencks* material to the Defendant until 48 hours before trial.

**IT IS FURTHER ORDERED** that the Government's Motion in Limine to Preclude the Defendant from Introducing Attorney Legal Opinion Documents (Rec. Doc. 129) is **DEFERRED.** The Court will permit the parties to attempt to introduce the legal opinion evidence at trial if they so desire. However, any party seeking to introduce legal opinion evidence must establish its relevance, authenticity, and overcome any hearsay objection. Before any attorney legal opinion document is mentioned at any time during trial by any witness or party, the parties shall seek a sidebar. Moreover, should the Defendant seek to present an advice of counsel defense, the Court will require further briefing specifically on the relevance of this defense and the availability of this defense as it relates to *mens rea* prior to trial. Therefore, the Defendant is ordered to brief this issue by February 4, 2008, if he seeks to have this defense available to him during trial, or otherwise the defense will be deemed waived. Any Government reply must be submitted by February 8, 2008.

**IT IS FURTHER ORDERED** that the Government's Motion to Compel Disclosure or in the Alternative to Exclude Expert Witness Testimony (Rec. Doc. 134) is **GRANTED IN PART AND DENIED IN PART.** The Defendant shall disclose to the Court for *in camera* review the identity and nature of any possible expert witness by February 4, 2008. The Court will order that this information be turned over the Government should it find that the witness's testimony is of such nature that immediate disclosure to the Government is warranted in order to facilitate the effi-

cient operation of the trial. In such case, reciprocal discovery will be promptly ordered.